# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Franchot Prather,

                              Petitioner,        Case No. 14-14860

v.                                               Judith E. Levy
                                                 United States District Judge
Connie Horton,

                              Respondent.

_____/

## OPINION AND ORDER DENYING THE AMENDED HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Petitioner Franchot Prather filed a *pro se* amended habeas corpus petition under 28 U.S.C. § 2254. He challenges his state convictions for assault with intent to commit murder, Mich. Comp. Laws § 750.83, assault with a dangerous weapon (felonious assault), Mich. Comp. Laws § 750.82, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony (felony firearm), second offense, Mich. Comp. Laws § 750.227b. Petitioner alleges ineffective assistance of counsel at trial and on appeal. Respondent Connie Horton urges the Court to deny relief.

For the reasons set forth below, Petitioner's claims for habeas relief are denied. Accordingly, the Court denies the amended petition, declines to issue a certificate of appealability, and denies Petitioner permission to appeal this decision *in forma pauperis*.

# I. Background

## A. The Trial and Sentence

The charges against Petitioner arose from a shooting on West Alexis Street in Ecorse, Michigan about 9:00 p.m. on a summer evening in 2011. Petitioner was tried in Wayne County Circuit Court in 2012. The Michigan Court of Appeals summarized the relevant facts as follows:

> On the evening of August 4, 2011, Jamil Lockheart was drinking beer with his neighbor on the neighbor's front porch when defendant rode up on his bicycle and started talking to the neighbor about purchasing some marijuana. A brief verbal exchange between Lockheart and defendant resulted in defendant's challenge to resolve their differences in a nearby vacant lot. Lockheart, presuming they would settle their disagreement by fisticuffs, accepted the challenge. He took two steps toward the lot, saw defendant pull a gun from his waistband, and immediately turned around and headed for home. Lockheart heard a gunshot, felt a bullet hit his leg, and fell to the ground. He hopped up and tried to run home, but defendant shot him in the other leg. As Lockheart tried to crawl away, defendant shot him again. In all, defendant shot Lockheart under the heart, twice in the left-side ribs, twice in the left leg, and once in the right leg. Defendant then pointed the gun at Lockheart's head. As Lockheart pled with defendant and tried to duck and dodge, defendant pulled the

trigger again, sending a shot past Lockheart's head before running away.

. . . .

During the trial, Lockheart testified that defendant shot him. In addition, Vanessa Williams testified to having witnessed defendant shoot Lockheart. Williams stated that she was sitting in a vehicle parked nearby and had an unobstructed view of defendant aiming a gun at Lockheart and of "fire" coming from the defendant's gun. Steven Salas, the detective who investigated the shooting, testified to the chronology and conduct of the investigation. . . .

*People v. Prather*, No. 310005, 2013 WL 3835958, at *1 (Mich. Ct. App. July 25, 2013).[1] During Detective Salas's subsequent interview with Petitioner, he swabbed Petitioner's hands and detected the presence of gunpowder residue. (*See* ECF No. 8-4, PageID.277–79).

The only defense witness was Petitioner's fiancé, Elizabeth Hudson. She testified that, on the night of the crime, she went to Petitioner's home on Knox Street in Ecorse at about 8:15 or 8:30 p.m. Around 9:00 p.m., she and Petitioner left the house. She dropped Petitioner off at the home of Misael and Jaime Pacheco on Tenth and Outer Drive at about 9:05 p.m. She spoke briefly with Mr. and Mrs. Pacheco and then went to her brother's house. She returned to the Pachecos' house about 10:00 p.m.

---

[1] This summary of the facts is supported by the record. However, the victim's surname is spelled "Lockhart" in the transcript of trial. (*See, e.g.,* ECF No. 8-4, PageID.192).

3

The same people were there, and Petitioner's frame of mind was the same as it had been earlier that evening. He did not talk about an incident, and she did not see a gun. (*Id.* at PageID.323-331.)

Ms. Hudson thought that Petitioner stayed at the Pachecos' house from the time she went to her brother's house until she returned to the Pachecos' house, but she admitted he could have left the Pachecos' house and returned to the house while she was away. She claimed that she would not lie for Petitioner, that Petitioner was not the type of person to commit the crime, and that he could not have done the shooting because he did not have a gun and was at the Pacheco's house, and not the scene of the crime, at the time of the incident. (*Id.*, PageID.334-37.)

During closing arguments, defense counsel argued that Petitioner was not present during the shooting, that the testimony of prosecution witnesses was not reliable, and that the gunshot residue test was not science. (*See* ECF No. 8-5, PageID.353-67.) Defense counsel urged the jurors to acquit Petitioner of all the charges. (*See id.*)

On March 15, 2012, the jurors found Petitioner guilty, as charged, of assault with intent to commit murder, felonious assault, felon in

4

possession of firearm, and felony firearm. (*See* ECF No. 8-5, PageID.396-398.)

At the sentencing on March 29, 2012, Petitioner claimed that his attorney did not do anything that he told him to do. (ECF No. 8-6, PageID.412.) He also asserted that he did not commit the crimes for which he was about to be sentenced. (*See Id.*, PageID.412–13). Nonetheless, the trial court sentenced Petitioner as a habitual offender to five years in prison for the felony firearm conviction, to be followed by concurrent terms of thirty-five years to seventy-five years for the assault with intent to commit murder, fifty-four months to fifteen years for the felonious assault, and six to fifteen years for being a felon in possession of a firearm. (*See id.*, PageID.413–14; *see also* ECF No. 8-9, PageID.519).

**B. The Direct Appeal**

On appeal from his convictions, Petitioner argued that the trial court erred and violated his right of confrontation by admitting Detective Salas' testimony about the gunshot residue test. Petitioner also claimed that his trial attorney was ineffective for failing to renew his pretrial objection to testimony about the gunshot residue test. The Michigan

5

Court of Appeals rejected these arguments and affirmed Petitioner's convictions. *See Prather*, 2013 WL 3835958, at *3.

In an application for leave to appeal in the Michigan Supreme Court, Petitioner phrased the issues as follows:

> Was it prosecutorial- and police misconduct to knowingly present unsupported suppressed evidence?
>
> And was it misleading to the jury to present the same evidence that is otherwise inadmissible without laying a proper foundation pursuant to the rules of evidence?
>
> Further, did trial counsel render constitutionally deficient assistance when he failed to object on the above grounds?
>
> And was it deficient for appellate counsel failure to raise the above by reviewing the record?

(ECF No. 8-10, PageID.593, 597.)

In addition to those issues about the gunshot residue test, Petitioner implied that his trial attorney was ineffective for failing to interview and produce Jomar Overall as a witness. *See id*. at PageID.582, 584–585, 602. On December 23, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Prather,* 495 Mich. 916 (2013).

6

## C. The Initial Habeas Petition

On December 22, 2014, Petitioner commenced this case by filing his initial habeas corpus petition. (*See* ECF No. 1.) His first ground for relief alleged that his trial counsel deprived him of the presumption of innocence and his right to remain silent by disclosing his legal status. (*Id.* at PageID.5.) Petitioner also asserted that appellate counsel was ineffective for failing to raise this claim on direct appeal and for waiving oral argument without informing him. (*Id.*)

Petitioner's second ground for relief was that the trial court deprived him of impeachment evidence. (*Id.* at PageID.7.) Petitioner's third and final ground for relief alleged that his trial attorney ignored the Pachecos, who would have supported his alibi defense. (*Id.* at PageID.8.)

Petitioner admitted in his habeas petition that he did not exhaust state remedies for these claims. (*Id.* at PageID.5–9.) Consequently, on January 16, 2015, the Court held Petitioner's case in abeyance pending exhaustion of state remedies and closed this case for administrative purposes. (ECF No. 2.)

7

### D. Post-Conviction Proceedings in State Court

On or about April 7, 2015, Petitioner filed a motion for relief from judgment in the state trial court. (ECF No. 8-7.) His motion alleged that trial counsel was ineffective for (a) disclosing Petitioner's legal status to the jury by stipulating to Petitioner being a felon, (b) failing to move for a mistrial when the trial court deprived Petitioner of his right to impeach a witness, and (c) failing to investigate and produce alibi witnesses that were endorsed on Petitioner's witness list. (*Id*. at PageID.417.) He also asserted that appellate counsel was ineffective for failing to file a motion to remand for an evidentiary hearing on trial counsel's ineffectiveness. (*Id*.)

Petitioner raised claims in his supporting brief in a similar manner to the way he presented these claims to the Court in his initial habeas corpus petition. (*Id*. at PageID.418–19.) On June 14, 2016, the trial court denied Petitioner's post-conviction motion because he failed to show "good cause" under Michigan Court Rule 6.508(D)(3) for not raising his claims on appeal. (ECF No. 8-8.)

In a delayed application for leave to appeal the trial court's decision that the Michigan Court of Appeals received December 13, 2016,

Petitioner argued that his trial attorney's failure to procure the Pachecos as alibi witnesses and his disclosure of Petitioner's legal status constituted deficient performance and ineffective assistance. (ECF No. 8-11, PageID.670.) He also alleged that his appellate attorney was ineffective for failing to raise Petitioner's ineffective assistance of counsel claim, regarding trial counsel's failure to secure the presence of the Pacheco's at trial, on appeal. (ECF No. 8-11, PageID.683.) The Michigan Court of Appeals denied leave to appeal because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Prather*, No. 336119 (Mich. Ct. App. Feb. 6, 2017).

Petitioner raised the same issues and one new issue in an application for leave to appeal in the Michigan Supreme Court. (ECF No. 8-12, PageID.722–28.) The new issue he alleged was that trial counsel was ineffective for failing to call Mr. Overall, a witness whose statement undermined the credibility of a witness for the prosecution. (*Id.* at PageID.727.) Petitioner contends that Mr. Overall's "testimony would have changed the outcome of the case proving defendant was actually innocent of the crime." (*Id.* at PageID.727.) On December 27, 2017, the Michigan Supreme Court denied leave to appeal because Petitioner had

9

failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Prather*, 501 Mich. 946 (2017).

### E. The Amended Petition and Answer in Opposition

On April 3, 2018, Petitioner returned to federal court with a motion to lift the stay and to amend his habeas corpus petition (ECF No. 3) and an amended petition (ECF No. 4). The amended petition raises two grounds for relief: (1) trial counsel's failure to file a proper alibi notice or to amend the notice "resulted in the forfeiture of alibi witnesses and le[ft] Petitioner without any defense at all"; and counsel's failure to speak directly to witnesses and to secure their attendance, and counsel's "disclos[ure] of [Petitioner]'s legal status prevented [Petitioner] from testifying about his whereabouts [for] fear of being impeached" (ECF No. 4, PageID.29); and (2) "trial counsel's failure to call, question, [and] cross examine *res gestae* witness Jomar Overall" and "appellate counsel['s] fail[ure] to raise this well preserved issue on appeal" amounted to ineffective assistance. (*id.*, PageID.31.)

On October 9, 2018, the Court granted Petitioner's motion to lift the stay and to amend the habeas petition. (ECF No. 5.) The Court also re-opened this case and ordered the Clerk of Court to serve the habeas

petitions on the State. (*Id.*) On April 9, 2019, Respondent filed her answer in opposition to the petition and the state-court record. (ECF Nos. 7 and 8.)

Respondent argues that habeas relief is not warranted because: Petitioner's claims about trial counsel and alibi witnesses are procedurally defaulted and meritless; (2) Petitioner's claim about trial counsel and *res gestae* witness, Jomar Overall, is unexhausted, procedurally defaulted, and meritless; and (3) to the extent Petitioner raises a separate claim of ineffective assistance of appellate counsel, his claim is meritless. (ECF No. 7, PageID.77–117.)

Petitioner did not file a reply to Respondent's answer. To the extent Petitioner did not raise any of his claims at all levels of state court review, the Court excuses the procedural error because the exhaustion rule is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Despite a petitioner's failure to exhaust the available remedies in state court, a federal district court may deny a habeas petition on the merits. 28 U.S.C. § 2254(b)(2).

In the habeas context, a procedural default is not a jurisdictional matter either. *Trest v. Cain*, 522 U.S. 87, 89 (1997). Accordingly, a federal

court may bypass a procedural-default question in the interest of judicial economy if the claim can be resolved easily against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Petitioner's claims do not warrant habeas relief, and the Court finds it more efficient to address the merits of his claims than to analyze whether the claims are procedurally defaulted. The Court, therefore, proceeds to address Petitioner's claims.

## II. Legal Standards

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If no state court adjudicated a petitioner's claim on the merits, § 2254's deferential standard of review does not apply, and the Court reviews the claim *de novo*. *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

The "clearly established Federal law" for Petitioner's claim is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,

13

a trial whose result is reliable." *Id*. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

"An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Strickland*, 466 U.S. at 688). However, "the mere fact that [an] attorney pursued a strategy other than the one [the defendant] thought was best does not show ineffective assistance of counsel" as "most matters of strategy are entrusted to counsel, not the defendant." *Wimberly v. Kowalski*, 838 F. App'x 173, 176 (6th Cir. 2020) (citing *Gonzalez v. United States*, 553 U.S. 242 (2008)).

"Appellate counsel's assistance is assessed under the same *Strickland* two-part standard." *Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir. 2019) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). To

prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues. *Smith*, 528 U.S. at 285 (citing *Strickland,* 466 U.S. at 687–91, 694).

## III. Discussion

No state court adjudicated the merits of Petitioner's claims about the ineffective assistance of trial counsel. Thus, this Court's review is *de novo. Stermer*, 959 F.3d at 721.

### A. Ineffective Assistance of Counsel at Trial

#### 1. The Pachecos

Petitioner alleges that his trial attorney was ineffective for failing to file a proper alibi notice and for failing to amend the alibi notice. The record indicates that the first alibi notice did not conform to the court rules, and after defense counsel corrected the errors, the second alibi notice was untimely. (*See* ECF No. 8-3, PageID.134.) The prosecutor objected to the notices, but at a subsequent hearing, she stated that she was leaving it up to the trial court to decide whether to allow defense

15

counsel to present his alibi witnesses. (*Id.*) The trial court denied the prosecutor's motion, based on her comment that she could present a fair trial with the amended notice of alibi. (*Id.*, PageID.134–37.)

Defense counsel subsequently produced one alibi witness (ECF No. 8-4, PageID.334–337), and he maintained during his closing argument that Petitioner was not present during the crime, that the prosecution witnesses were not reliable, and that there was more than enough doubt for the jury to acquit Petitioner. (ECF No. 8-5, PageID.353–367.) Petitioner's claim that trial counsel's defective alibi notices left him without a defense is not supported by the record. Accordingly, he has no right to relief on his claim.

Petitioner alleges next that his trial attorney ignored his request to speak directly with witnesses and thereby failed to secure the attendance of witnesses. However, defense counsel did produce one alibi witness, Elizabeth Hudson, and he subpoenaed Mr. and Mrs. Pacheco. Defense counsel's amended notice of alibi showed that Mr. and Mrs. Pacheco were expected to testify that Petitioner was at their home from approximately 9:00 p.m. on the day of the crime until the following morning. (ECF No. 8-7, PageID.479).

"[T]he failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). "But *Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland*, 466 U.S. at 689–90). Even if defense counsel did not speak with the Pachecos directly, as Petitioner instructed, he pursued Petitioner's preferred trial strategy by subpoenaing them for trial. Though the Pachecos did not appear for trial, defense counsel requested arrest warrants for the Pachecos, and the trial court granted his request. (*See* ECF No. 8-4, PageID.317–18; *see also* ECF No. 8-5, PageID.390–91.)

This summary of the record demonstrates that defense counsel attempted to secure the presence of the Pachecos as additional alibi witnesses, and he preserved the importance of their testimony as an issue for appeal. Trial counsel had no control over whether the Pachecos honored the subpoenas. Indeed, their failure to honor the subpoenas could suggest that they might have been reluctant witnesses and not helpful to the defense. But we do not know why they failed to appear –

17

only that trial counsel subpoenaed them and then took the additional step of seeking an arrest warrant to sure their appearance at trial. Petitioner has failed to show that his trial attorney's performance was deficient and that the allegedly deficient performance prejudiced the defense.

### 2. Counsel's Disclosure of Petitioner's Legal Status

Petitioner asserts that trial counsel was ineffective for disclosing his legal status to the jurors and that this prevented him from testifying about his location at the time of the crime for fear of being impeached. (ECF No. 4, PageID.29.) Petitioner appears to be referring to defense counsel's stipulation that Petitioner was previously convicted of a felony and that he had no right to possess a firearm on the day when Mr. Lockhart was shot. (*See* ECF No. 8-4, PageID. 190–91).

There was an obvious reason for stipulating to Petitioner's status as a felon. Petitioner was charged with being a felon in possession of a firearm. The stipulation eliminated the prosecutor's need to produce Petitioner's criminal record to prove the felon-in-possession charge. That, in turn, prevented the jury from learning the nature of Petitioner's prior convictions.

18

Defense counsel's strategy was reasonable as it prevented potentially prejudicial evidence from being admitted. Therefore, defense counsel was not ineffective for stipulating to Petitioner's status as a felon.

### 3. Failing to Produce Jomar Overall

Petitioner also claims that trial counsel was ineffective for failing to produce Jomar Overall as a witness and "proceeded to closing arguments against [his] wishes." (ECF No. 4, PageID.31.) Mr. Overall was the driver of the car in which eyewitness Vanessa Williams was seated during the shooting. Ms. Williams claimed that she saw Petitioner shoot Mr. Lockhart.

Under *Strickland*, an attorney's decisions about what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *See Finley v. Burt*, No. 2:15-CV-14455, 2021 WL 4478930, at *10 (E.D. Mich. Sept. 30, 2021) (citing *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003)). Petitioner concedes that his defense attorney consulted with him on this strategy, in accordance with *Strickland*. (ECF No. 4, PageID.31.) Here, there is no reason to believe that Mr. Overall would have exonerated Petitioner. Therefore, defense

19

counsel's failure to call Mr. Overall as a defense witness did not amount to ineffective assistance.

## B. Ineffective Assistance of Appellate Counsel

An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir. 2019) ("Appellate attorneys are not required to raise every 'colorable' claim."). In fact,

> the process of "'winnowing out weaker arguments on appeal'" is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

The state trial court addressed Petitioner's claim about appellate counsel during the post-conviction proceedings and concluded that Petitioner was not prejudiced by his appellate attorney's actions. This Court agrees.

20

Petitioner's underlying claims about trial counsel lack merit for the reasons given in the discussion above. It is a well-established principle that "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Tackett v. Trierweiler*, 956 F.3d 358, 376 (6th Cir. 2020) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Accordingly, appellate counsel's performance was not deficient or prejudicial.

Further, the state trial court's rejection of Petitioner's claim about appellate counsel was not contrary to, or an unreasonable application of, *Strickland* or *Robbins*. As such, Petitioner has no right to relief on his claim about appellate counsel.

## IV. Conclusion

For the reasons set forth above, Petitioner's claims about trial counsel lack merit, and the state trial court's rejection of his claim about appellate counsel was objectively reasonable.

Accordingly, **IT IS ORDERED** that the amended petition for writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability because reasonable jurists could not disagree

with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS FURTHER ORDERED** that Petitioner may not proceed *in forma pauperis* on appeal if he appeals this decision. He may apply to the Court of Appeals for leave to proceed *in forma pauperis* and for a certificate of appealability.

IT IS SO ORDERED.

Dated: December 16, 2021          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 16, 2021.

                                  s/William Barkholz
                                  WILLIAM BARKHOLZ
                                  Case Manager